UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **DAVID YORK,** *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-10-55** |
| | § | |
| **TROPIC AIR, LTD.,** *et al*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiffs David and Gay York's ("Plaintiffs") Motion to Compel Tropic Air, Ltd. ("Tropic Air") to Respond to Jurisdictional Discovery (Dkt. No. 25), to which Tropic Air has responded (Dkt. No. 29), Plaintiffs have replied (Dkt Nos. 30, 31), and Tropic Air has surreplied (Dkt Nos. 32, 33). Having considered the motion, response, replies, record, and relevant law, the Court is of the opinion that Plaintiffs' motion should be **GRANTED** in part and **DENIED** in part.

**I. Background**

This action arises from the September 7, 2008 crash of a Cessna Caravan 208B aircraft allegedly owned and operated by Tropic Air (hereinafter "subject aircraft"), during which Plaintiffs claim they were injured. In its Answer, Tropic Air raised an affirmative defense pursuant to FED. R. CIV. P. 12(b)(2), contesting this Court's exercise of personal jurisdiction. (Dkt. No. 6.) As a result, the Parties agreed to first pursue discovery related to personal jurisdiction over Tropic Air, and the Court entered an agreed scheduling order providing that "[d]iscovery as to Tropic Air shall be limited to jurisdiction except that which is agreed to by Tropic Air." (Joint Pretrial Scheduling Order, Dkt. No. 20 ¶ 1.)

Plaintiffs now complain that Tropic Air has raised improper objections to jurisdictional discovery. Specifically, Plaintiffs claim that Tropic Air's objections are generalized and conclusory, and they fail to meet the specificity standards set forth by the Federal Rules of Civil Procedure and the Fifth Circuit. Plaintiffs further complain that Tropic Air has failed to supplement its discovery answers in order that Plaintiffs can prepare for depositions on jurisdiction. Thus, Plaintiffs move the Court to compel Tropic Air to respond to its discovery requests.

## II. Legal Standard

As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* FED. R. CIV. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear [ ] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the

discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *Gauthier v. Union Pacific R.R. Co.*, 2008 WL 247016, at *3 (E.D. Tex. June 18, 2008); *see also* FED. R. CIV. P. 26(b)(2) (Courts must limit discovery if 1) the discovery sought is shown to be unreasonably cumulative or duplicative, or is more easily obtainable from another, more convenient source; 2) the party seeking discovery has had ample opportunity to obtain the information sought; or 3) the burden or expense of the discovery outweighs its likely benefit.).

**III. Analysis**

In response to Plaintiffs' Interrogatories and Requests for Production (RFP), Tropic Air generally objected to the scope of discovery to the extent the requests were not properly limited in time or sought documents and/or information unrelated to the issue of whether Tropic Air is subject to personal jurisdiction in the State of Texas. Sometime after Tropic Air responded to Plaintiffs' discovery requests, the Parties conferred and agreed to limit discovery to a time period of five years before the alleged accident up until the date this action was filed, that is, from September 7, 2003 to July 23, 2010. Plaintiffs also separately stipulated that all requests are limited to Tropic Air's contact with Texas.

Plaintiffs now complain that, despite this agreement, Tropic Air failed to amend its discovery responses to remove the objection to the scope of discovery, and thus ask the Court to strike this objection. Tropic Air responded that because the agreement did not require Plaintiffs to amend their initial requests, Tropic Air will not waive its objection to the requests as written. Tropic Air further notes that, despite this objection, it initially produced 323 pages of documents and has since supplemented its responses on two occasions, producing an additional 124 pages of documents.

Plaintiffs further complain that Tropic Air has improperly lodged "overbroad and unduly burdensome" objections to the "vast majority" of their discovery requests. (Dkt. No. 25 ¶ 8.) Plaintiffs served Tropic Air with a total 120 interrogatories and 23 RFPs, but have only addressed a limited number of requests in their motion to compel and related filings. To the extent Plaintiffs suggest that the Court consider all 143 discovery requests and order that Tropic Air respond to each request, "[t]his is an improper global request that the Court declines to grant. [Plaintiffs] must specify the allegedly frivolous objections in question." *Loyd v. Rubin*, 1999 WL 1204484, *3 (N.D. Tex. Dec. 15, 1999). Accordingly, the Court will consider only those discovery requests explicitly identified in Plaintiffs' motion to compel (Dkt. No. 25), reply (Dkt. No. 30), and supplemental reply (Dkt. No. 31).

**A. Interrogatories (Dkt. No. 25, Ex. A)**

**1. Interrogatory No. 1**

Interrogatory No. 1 seeks contact information for any person/entity that resides in Texas, has a Texas address, or maintains a principal place of business in Texas, to whom Tropic Air has provided services in the past ten years. Tropic Air objected to this interrogatory on the basis that it was overly broad, unduly burdensome, and not limited in time and scope. Despite its objections, Tropic Air responded that it does not retain any residential information on its passengers, but that it would continue to search for this information and would supplement its responses if necessary.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiffs' motion to compel a response to Interrogatory No. 1 is denied as moot.

**2. Interrogatory No. 2**

Interrogatory No. 2 asks Tropic Air to identify all aircraft and aircraft equipment that it purchased, operated, repaired, or serviced in Texas in the past ten years. For each aircraft, Tropic Air was instructed to list the purchase price, the circumstances under which the transaction was initiated, who was involved in the transaction, and where the transaction was performed. Tropic Air objected to this interrogatory on the basis that it was overly broad, unduly burdensome, and sought information outside the time period relevant to a jurisdictional inquiry. Despite its objections, Tropic Air responded that it has not purchased, repaired, or serviced any aircraft in Texas, nor has it performed business operations, flown passengers, provided flight services, earned revenue, scheduled flights, or performed any cargo business operations in Texas within the past three years. However, Tropic Air stated that it had flown ferrying flights of new aircraft purchased in Kansas and flown to Belize, which may have flown through or stopped in Texas.

To the extent Tropic Air limited its response to the past three years, Plaintiffs' motion to compel a response to Interrogatory No. 2 is granted, and Tropic Air is ordered to supplement its response to include all aircraft and aircraft equipment that it purchased, operated, repaired, or serviced in Texas from September 7, 2003 to July 23, 2010. To the extent Tropic Air has already supplemented its response in accordance with the Parties' agreement, Plaintiffs' motion is denied as moot.

**3. Interrogatory No. 3**

Interrogatory No. 3 asks Tropic Air to provide detailed information about any aircraft it has operated in Texas, including the number of aircraft operated, number of flight hours per plane, number of passengers, and pilot and passenger information, as well as the total gross revenue received from its operations in Texas. Interrogatory No. 3 also asks for information

related to any airfields and storage facilities used in Texas, including how the relationship with the entity was initiated and maintained, length of relationship, and volume of business conducted with the entity. Tropic Air objected to this interrogatory on the basis that it was overly broad, unduly burdensome, and sought information outside the time period relevant to a jurisdictional inquiry. Despite its objections, Tropic Air responded that it has not performed business operations, flown passengers, provided flight services, earned revenue, scheduled flights, or performed any cargo business operations in Texas within the past three years.

To the extent Tropic Air limited its response to the past three years, Plaintiffs' motion to compel a response to Interrogatory No. 3 is granted, and Tropic Air is ordered to supplement its response to include information about any aircraft operated or airfields/storage facilities used in Texas from September 7, 2003 to July 23, 2010. To the extent Tropic Air has already supplemented its response in accordance with the Parties' agreement, Plaintiffs' motion is denied as moot.

### 4. Interrogatory No. 20

Interrogatory No. 20 asks whether, within the past 10 years, Tropic Air made any payments or directed any funds to any person or business located in Texas. If so, Tropic Air is to state: the nature and method of payment, including whether any credit lines were opened in Texas; the recipient, date, purpose, and amount of payments; and the percentage of the payments relative to Tropic Air's total business expenditures. Tropic Air objected to this interrogatory on the basis that it was overly broad, unduly burdensome, and sought information outside the time period relevant to a jurisdictional inquiry. Despite its objections, Tropic Air responded that its main vendors are not located in Texas, and although it occasionally purchases parts online, it does not know the locations of the warehouses from which the parts are sent. Tropic Air further

responded that it continues the process of conducting a diligent search for this information, and it
will supplement its responses as necessary.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's
motion to compel a response to Interrogatory No. 20 is denied as moot.

### B. Requests for Production (Dkt. No. 25, Ex. B)

#### 1. RFP No. 3

RFP No. 3 requests documents related to engine maintenance service plans/programs,
engine programs, and/or extended warranty programs for aircraft Tropic Air operates. Tropic Air
objected to this request on the basis that it was overly broad, unduly burdensome, and sought
documents outside the time period relevant to a jurisdictional inquiry. Despite its objections,
Tropic Air responded that there has not been any maintenance performed on any of its aircraft in
Texas in the past three years, nor has it contracted with any Texas entity to perform maintenance
on any of its aircraft in the past three years.

To the extent Tropic Air limited its response to the past three years, Plaintiffs' motion to
compel a response to RFP No. 3 is granted, and Tropic Air is ordered to supplement its response
to include documents related to engine maintenance service plans/programs, engine programs,
and/or extended warranty programs for aircraft Tropic Air operated in Texas from September 7,
2003 to July 23, 2010. To the extent these documents do not exist, are not in Tropic Air's
possession, or have already been produced by Tropic Air in accordance with the Parties'
agreement, Plaintiffs' motion is denied as moot.

#### 2. RFP Nos. 8 & 12

RFP No. 8 seeks documents reflecting Tropic Air's sales of products or services to
persons or entities with Texas addresses. RFP No. 12 seeks documents or communications

concerning goods or services that Tropic Air sold or sought to sell to any person or entity in Texas. Tropic Air objected to both requests on the basis that they were overly broad, unduly burdensome, and sought documents outside the time period relevant to a jurisdictional inquiry. Specifically, the requests appeared to encompass documents relating to all companies to which Tropic Air sold goods or services that have a branch in Texas, regardless of whether or not Tropic Air ever sold goods or services to the Texas branch. Despite its objections, Tropic Air produced bank statements for the last three years from its Bank of America checking account in Texas and a copy of its credit agreement with Gulf Coast Scuba, Inc. in Beaumont, Texas, whereby Tropic Air permits Gulf Coast Scuba to issue electronic tickets for Tropic Air flights. Tropic Air also stated that it has similar credit agreements with seven other Texas operators, but it does not retain residential information on its passengers. Finally, Tropic Air responded that it continues the process of conducting a diligent search for this information, and it will supplement its responses as necessary.

To the extent Tropic Air limited its responses to RFP Nos. 8 and 12 to the past three years, Plaintiffs' motions to compel responses to RFP Nos. 8 and 12 are granted, and Tropic Air is ordered to supplement its responses to include documents or communications concerning goods, products, or services that Tropic Air sold or sought to sell to any person or entity in Texas from September 7, 2003 to July 23, 2010. Tropic Air is further ordered to produce copies of the seven credit agreements it has with other Texas operators besides Gulf Coast Scuba. To the extent these documents do not exist, are not in Tropic Air's possession, or have already been produced by Tropic Air in accordance with the Parties' agreement, Plaintiffs' motions to compel responses to RFP Nos. 8 and 12 are denied as moot.

8

### 3.  RFP Nos. 9, 14, 42

RFP No. 9 seeks correspondence between Tropic Air and Pratt & Whitney Canada Corp. from September 6, 2003 to present. RFP No. 14 seeks contracts, agreements, communications, and billing records between Tropic Air and Pratt & Whitney. RFP No. 42 seeks documents, invoices, purchase agreements, bills, work orders, emails, and correspondence to and from Pratt & Whitney Canada Corp. Tropic Air objected to RFP No. 9 on the basis that it was overly broad, unduly burdensome, and sought documents outside the time period relevant to a jurisdictional inquiry. Tropic Air further objected to all three requests on the basis that each sought documents that were not relevant to the jurisdictional inquiry, as Pratt & Whitney is a Canadian corporation. Despite its objections, Tropic Air produced a purchase invoice for a Pratt & Whitney engine.

In their motion to compel, Plaintiffs explain that all three requests are relevant to jurisdiction because Pratt & Whitney, the manufacturer of the engine in the subject aircraft, has a large facility near the Dallas/Fort Worth Airport and also has field service agents based in Texas that service Central America. Thus, to the extent Tropic Air has had agreements, communications, billing, work orders, or emails through Pratt & Whitney's Texas field representatives or its Texas office, Plaintiffs claim these documents should have been produced. In response, Tropic Air amended its answer to read "None." Tropic Air states that it purchases its engines from Pratt & Whitney Canada and interacts with Pratt & Whitney service representatives in Panama, not Texas. As such, Tropic Air has no documents that reflect dealings with Pratt & Whitney service representatives in Texas.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motions to compel responses to RFP Nos. 9, 14, and 42 are denied as moot.

### 4.  RFP No. 13, 15, 16

RFP No. 13 seeks contracts, agreements, or purchase orders executed by or between Tropic Air and any person or entity in Texas. RFP No. 15 seeks contracts, agreements, or transactions executed by or between Tropic Air and any Texas citizen or resident. RFP No. 16 seeks contracts, agreements, or transactions executed by or between Tropic Air and any person or entity that maintains a Texas address. Tropic Air objected to all three requests on the basis that each sought documents that were outside the time period relevant to a jurisdictional inquiry. Despite its objections, Tropic Air responded that it maintains a mail drop service under Mr. Andrew Francis per informal agreement, and further responded that although its main vendors are not located in Texas, it occasionally purchases parts online, and does not know the location of the warehouses from which the parts are sent. Tropic Air also produced a copy of its credit agreement with Gulf Coast Scuba, Inc. in Beaumont, Texas. Finally, Tropic Air responded that it continues the process of conducting a diligent search for this information, and it will supplement its responses as necessary.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiffs' motions to compel responses to RFP Nos. 13, 15, and 16 are denied as moot.

### 5.  RFP No. 50

RFP No. 50 seeks documents, invoices, bills of sale, work orders, emails, compliance records, bulletins, and maintenance records for extending the overhaul intervals on the subject aircraft's engine. Tropic Air objected to this request on the basis that it sought documents that are not relevant to the jurisdictional inquiry. Despite this objection, Tropic Air responded that it did not know of any such documents.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 50 is denied as moot.

**6.   RFP No. 51**

RFP No. 51 seeks bills or invoices sent to persons or entities with a Texas address. Tropic Air objected to this request on the basis that it was overly broad, unduly burdensome, and not sufficiently limited to invoices sent to Texas residents or entities. Tropic Air further objected because the request sought documents outside the time period relevant to a jurisdictional inquiry. Despite these objections, Tropic Air responded that it does not retain any residential information on its passengers. Tropic Air further responded that its main vendors are not located in Texas, and although it occasionally purchases parts online, it does not know the locations of the warehouses from which the parts are sent. Tropic Air also produced bank statements for the last three years from its Bank of America checking account in Texas. Finally, Tropic Air responded that it continues the process of conducting a diligent search for this information, and it will supplement its responses as necessary.

To the extent Tropic Air limited its response to RFP No. 51 to the past three years, Plaintiffs' motion to compel a response to RFP No. 51 is granted, and Tropic Air is ordered to supplement its response to include bills or invoices sent to persons or entities at a Texas address from September 7, 2003 to July 23, 2010. To the extent these documents do not exist, are not in Tropic Air's possession, or have already been produced by Tropic Air in accordance with the Parties' agreement, Plaintiffs' motion to compel a response to RFP No. 51 is denied as moot.

**7.   RFP No. 60**

RFP No. 60 seeks documents related to Tropic Air's purchase and/or lease of the subject aircraft. Tropic Air objected to this request on the basis that it was overly broad and unduly

burdensome, as no portion of the purchase and/or lease of the subject aircraft was related to Texas or involved any Texas entity, with the exception of the electronic transfer for the payment of the aircraft, which occurred via Tropic Air's Bank of America account in Texas. Tropic Air further objected because the request sought documents outside the time period relevant to a jurisdictional inquiry.

Plaintiffs claim that Tropic Air leased the subject aircraft from a Texas company during the agreed-upon time frame, and this request goes to the very heart of the jurisdictional inquiry. In response, Tropic Air states that it did not lease the aircraft from a Texas company, but instead sublet the aircraft from Baymen International Ltd., a Delaware corporation.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 60 is denied as moot.

**8.   RFP No. 69**

RFP No. 69 seeks correspondence, agreements, and/or contracts with GAB Robins Aviation ("GAB Robins"). Tropic Air objected to this request on the basis that the documents sought are not relevant to the jurisdictional inquiry, as GAB Robins is a New Jersey company.

Plaintiffs argue that if Tropic Air obtained insurance from GAB Robbins in Texas during the agreed-upon time frame, these contracts are discoverable. In response, Tropic Air has amended its answer to state that, to the extent the request is being limited to GAB Robins in Texas, the answer is "None."

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 69 is denied as moot.

### 9.  RFP No. 72

RFP No. 72 seeks documents related to financing Tropic Air's aircraft with financial institutions in the United States, including, but not limited to, Texas. Tropic Air objected to this request because it sought documents outside the time period relevant to a jurisdictional inquiry. Despite this objection, Tropic Air responded that it has not entered into any financing agreements with any financial institutions in Texas within the past three years.

To the extent Tropic Air limited its response to RFP No. 72 to the past three years, Plaintiffs' motion to compel a response to RFP No. 72 is granted, and Tropic Air is ordered to supplement its response to include documents related to financing its aircraft with financial institutions in Texas from September 7, 2003 to July 23, 2010. To the extent these documents do not exist, are not in Tropic Air's possession, or have already been produced by Tropic Air in accordance with the Parties' agreement, Plaintiffs' motion to compel a response to RFP No. 72 is denied as moot.

### 10. RFP No. 74

RFP No. 74 seeks contracts, agreements, and correspondence between Tropic Air and Cessna Finance Corporation (CFC). Tropic Air objected to this request on the basis that the documents sought are not relevant to the jurisdictional inquiry, as CFC is a Kansas corporation.

Plaintiffs argue that this request is relevant to jurisdiction because CFC has an office in Hurst, Texas that services customers in Central America. To the extent Tropic Air had any dealings with CFC's Texas office during the agreed-upon time period, Plaintiffs claim those dealings are discoverable. In response, Tropic Air has amended its answer to state that, to the extent the request is being limited to only documents related to CFC's Texas office, the answer is "None."

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 74 is denied as moot.

### 11. RFP No. 77

RFP No. 77 seeks agreements, codeshare agreements, and contracts with American Airlines. Tropic Air objected to this request because it sought documents outside the time period relevant to a jurisdictional inquiry. Despite this objection, Tropic Air produced an invoice for a one-time ad it placed in a June 2009 American Airlines magazine.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 77 is denied as moot.

### 12. RFP No. 81

RFP No. 81 seeks documents depicting Tropic Air's annual revenues for the past 10 years from persons or entities that reside or have a place of business in Texas. Tropic Air objected to this request on the basis that it was overly broad and unduly burdensome, and was not sufficiently limited in scope to revenues from operations of business in Texas. Tropic Air further objected because it sought documents outside the time period relevant to a jurisdictional inquiry. Despite these objections, Tropic Air responded that it does not retain any residential information on its passengers, nor does it receive this information from customers who pay for tickets through its website. Tropic Air also produced a copy of its agreement with The Belize Bank showing that customer information is only transmitted through the bank, which provides Tropic Air with payment processing services.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 81 is denied as moot.

**13. RFP No. 83**

RFP No. 83 seeks documents that relate to taxes, sales, and use paid by Tropic Air to a Texas taxing authority. Tropic Air objected to this request on the basis that it was overly broad, unduly burdensome, and sought documents outside the time period relevant to a jurisdictional inquiry. Despite this objection, Tropic Air responded "None."

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 83 is denied as moot.

**14. RFP No. 84**

RFP No. 84 seeks communications, emails, and correspondence with aircraft brokers that have an office in Texas. Tropic Air objected to this request on the basis that it was overly broad and unduly burdensome, as it appeared to encompass documents relating to any and all aircraft brokers with whom Tropic Air corresponded that have a branch in Texas, regardless of whether or not Tropic Air corresponded with a Texas branch. Tropic Air further objected to this request because it sought documents outside the time period relevant to a jurisdictional inquiry. Despite these objections, Tropic Air responded that it has not entered into any aircraft brokerage agreements with any Texas aircraft brokers within the past three years.

To the extent Tropic Air limited its response to RFP No. 84 to the past three years, Plaintiffs' motion to compel a response to RFP No. 84 is granted, and Tropic Air is ordered to supplement its response to include communications, emails, and correspondence with any Texas aircraft brokers from September 7, 2003 to July 23, 2010. To the extent these documents do not exist, are not in Tropic Air's possession, or have already been produced by Tropic Air in accordance with the Parties' agreement, Plaintiffs' motion to compel a response to RFP No. 84 is denied as moot.

**15. RFP No. 114**

RFP No. 114 seeks documents reflecting Tropic Air's purchase of the Cessna Caravan aircraft assigned tail number V3-HFQ. Tropic Air objected to this request on the basis that it was overly broad, unduly burdensome, as it was not limited in scope to purchases that took place in Texas with a Texas entity. Despite this objection, Tropic Air responded that it did not purchase the Cessna Caravan aircraft assigned tail number V3-HFQ in Texas or from a Texas entity.

Plaintiffs now state that, based on information learned since discovery was propounded, the request should be modified to state "lease" instead of "purchase." Tropic Air has responded that it will review its records and confirm whether its answer should be modified.

Accordingly, Plaintiff's motion to compel a response to RFP No. 114 is denied as moot.

**16. RFP No. 119**

RFP No. 119 seeks drafts of contracts or agreements that contain the term "Texas" or "TX." Tropic Air objected to this request on the basis that it was overly broad and unduly burdensome, as it was not limited in scope to contracts or agreements that were executed in Texas or with a Texas entity. Tropic Air further objected to this request because it sought documents outside the time period relevant to a jurisdictional inquiry. Despite these objections, Tropic Air produced a copy of its credit agreement with Gulf Coast Scuba, Inc. in Beaumont, Texas.

In response to Plaintiffs' motion to compel, Tropic Air stated that it has since produced all of the contracts with Texas travel agents it could locate. Tropic Air further stated that is has searched its computer system for any and all emails related to any Texas travel agents and has identified additional documents, which it will produce.

The Court is satisfied that Tropic Air has adequately responded. Accordingly, Plaintiff's motion to compel a response to RFP No. 119 is denied as moot.

**17. Unknown Request**

Finally, without citing to any specific interrogatory or request for production, Plaintiffs complain that Tropic Air "objects to the term 'transaction' as vague." (Dkt. No. 30 at 4.) As noted above, Plaintiffs must specify the allegedly frivolous objections in question. The Court will not scour 50-plus pages of discovery requests and responses in an attempt to locate the specific request containing the word "transaction" to which Plaintiffs ask the Court to compel Tropic Air to respond.

**C. Failure to Produce Specific Documents**

Plaintiffs further complain that they are aware of the following documents, not otherwise addressed herein, that Tropic Air has failed to produce:

1. Records relating to a Tropic Air ad in the Houston Yellow Pages;

2. Contracts/agreements with Texas entities that lease planes to Tropic Air;

3. Contracts with publications in Texas from which Tropic Air has purchased advertising;

4. Correspondence between Tropic Air and its Texas accountant; and

5. Copies of deposits made to Tropic Air's lock box in Dallas, as well as the contracts that call for payment to be made to Tropic Air in Dallas.

Assuming these documents do exist, the Court finds that they are relevant to the jurisdictional inquiry and should be produced. Accordingly, Tropic Air is ordered to produce all documents falling within the five categories listed above, dated September 7, 2003 to July 23, 2010. To the extent these documents do not exist, are not in Tropic Air's possession, or have already been produced, Plaintiffs' motion to compel is denied as moot.

**D. Plaintiffs' Request for a Neutral Third Party to Conduct Electronic Discovery**

Finally, Plaintiffs have submitted a number of invoices generated by Tropic Air and transmitted to Island Dreams, Inc. ("Island Dreams"), a Houston travel agency that regularly books trips on Tropic Air. (Dkt. No. 31, Ex. A.) Plaintiffs also submitted copies of payments Island Dreams sent to Tropic Air at its Dallas, Texas lockbox. (*Id.*) Plaintiffs argue that these documents—which Island Dreams produced in response to Plaintiffs' Deposition by Written Questions—constitute proof that Tropic Air is intentionally withholding documents responsive to discovery. Thus, given Tropic Air's incomplete production of documents, Plaintiffs move the Court to "order Tropic to allow a neutral third party electronic discovery person to perform a search of Tropic's email and computer system." (Dkt. No. 31 at 2.)

Tropic Air maintains that such a request is unnecessary for many reasons. First, unlike Island Dreams—which apparently keeps copies of invoices generated by Tropic Air—Tropic Air explains that it does not have a set or standard document retention policy. Tropic Air states that its reservation system creates and tracks tickets and payments on each account, but once payment is entered in the system for tickets on a particular invoice, the invoice is deleted and cannot be generated within the reservation system. Because Tropic Air has no policy to retain these documents, it is unlikely that a forensic examiner would turn up documents that Tropic Air did not uncover when it conducted its own search of its computer and email systems.

Next, a forensic examiner would likely need to be flown into Belize from the United States at Tropic Air's expense, thus constituting an unduly and costly burden. Finally, Tropic Air responds that it has already produced relevant documents that were electronically stored, and it has properly objected to production of other documents on the grounds of burdensomeness and relevancy as well. Notwithstanding these objections, Tropic Air is willing to work with

18

Plaintiffs' counsel to ensure that all relevant documents have been produced and will supplement its discovery responses as any additional documents are located.

The Court is satisfied that Tropic Air has searched its computer and email systems and has produced those responsive documents in its possession, and finds that the burden and expense of requiring Tropic Air to enlist a forensic examiner outweighs its likely benefit. *See* FED. R. CIV. P. 26(a). Accordingly, the Plaintiffs' request for a "neutral third party electronic discovery person" to perform a search of Tropic' Air's email and computer system is denied.

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion to Compel Tropic Air to Respond to Jurisdictional Discovery (Dkt. No. 25) is hereby **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

**SIGNED** this 28th day of April, 2011.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE